May it please the court, your honor, I, Myron Scott, represent the petitioner, Coletta Beneli. Joining me today, Professor Michael Ginsberg, who represents the U.S. Association for Human Democracy. I will speak for six minutes. I have to be sure if I'm being followed. And Mr. Professor Volkmann will speak for four minutes. Mr. Scott, may I ask you a question? Yes. In your reply brief, you say Beneli chose only that part of the NLRB's decision that declined to apply the high standard to pending cases. In what ways does that play a role? Regarding the old deferral standard. Yes. Now we haven't waived it, your honor, but frankly the problem under the old deferral standard is that there is no adequate record in the arbitration order to determine whether the arbitrator in fact correctly identified and considered the unfair labor practice issue in the totality of the circumstances. So we believe that to secure a reasonable decision in this case, and to make an informed decision by the NLRB, application of the new deferral standard is necessary. So what you're saying is that if a case was ordered to grant brief peace under the old standard, the case would have to be re-arbitrated, wouldn't it? Because there is no record. Well, the problem with your argument is that everybody was operating under the old system, which, as you understand probably far better than I, involves very informal arbitration proceedings usually performed on lawyers, and you don't have a court reporter there. Or if you do, sometimes the record isn't all that helpful. So what do we do about that? I think one solution that avoids some of the difficulties of wholesale application, which is what primarily I think concerns the NLRB of the new deferral standard, I think what we do is enact the new deferral standard, which in this quasi-traditional proceeding, the NLRB did. Now the question is, does it apply to the individual whose perseverance brought this case before the agency so that this reform could occur? What you're saying is implicit in my question. Particularly the direct result of that was that Ford was considering the fact that everybody had organized their lives around the old Olin-Spielberg model of arbitration and that it would be unfair to sort of upset settled expectations by making it retroactive. That's how I read the NLRB's decision. I think that's a fair reading, Your Honor. What we attempted to argue on brief is that there were alternatives to the wholesale application to all pending cases. In particular, we think important is the status of the Pennelly case as the case of first impression. Professor Glauber, in fact, is going to sum this up. I guess the problem I'm having is that our standard of review is arbitrary and capricious. And, yes, the board could have gone a different way. Was it arbitrary and capricious for the board to simply say, for the reasons I just articulated, we're not going to make it retroactive? It's going to be a prospective rule. I see. So we're back to the old deferral standard. And the standard of review by a U.S. Court of Appeals. Yes, yes. First of all, as I would say, the standard of review, and Professor Glauber, I think, has a site on this. The standard of review on retroactivity cases we submit is de novo. It's a question of law, not a question of fact. Or a mixed question, that is to say, is it not within some area of judgment for the NLRB to decide whether or not a rule be prospective or retroactive in its application? Well, certainly the NLRB has discretion to decide. So it makes a standard decision of whether it's retroactive or prospective. Isn't that so? If you have some discretion. It can be both. That's the problem we're having with the RER. I see. Well, our position is that, in fact, is it a de novo standard that the discretion that the agency has must be consistent with its obligations under the statute to enforce the act. The agency, in fact, acknowledged that the arbitration record before it did not enable it to even determine, as you said, if the statutory issue was even accurately identified. The act speaks in terms of maintaining stability and peace. Yes, indeed. And labor force. And that includes not only acts that are protective of employees but acts that also recognize the legitimate interests of the employer. It's a delicate balance. I understand that, Your Honor. And what we have tried to suggest as a relief that we're requesting is that this case, given its status as a case of first impression, be remanded for reconsideration solely as a case of first impression. And the agency need not have, and may well have struck the equitable balance correctly in determining not to address, to apply the new standard to all prior cases, which were cases of second impression. In spite of the balance of equities, it seems to suggest that it's not completely denial. You talk about one of the factors they forced to determine, or forced to determine whether to apply it or not to apply it here because they're decreed to do the second one, first impression, but there are four others. So, yes, any others you feel strongly suggest there should have been? I think there is the argument that is particularly made in the Association for Community Democracy's brief that where substantive right is at stake, it is tied into a degree of consideration as opposed to procedural. Yeah, procedural. Yes, that's a good point. It seems to me this is a procedural issue. It has to do with the substance of the charge. It has to do with how the charge is going to be resolved. I see that works in your interest. Well, we do submit that if you look in particularly in our brief, in our brief pages 12 through 13, and at the factual findings of the administrative law judge, the retaliatory motive we submit is so blatant in this case that it may indeed rise to the level of being rebuttable. How can that be if the judge said basically you could go either way on this, that you could have concluded that the animus was because of her union activities or it could have been because of her insubordination and I don't know what to call it, conduct upbecoming, plus her bad safety record? Your Honor, if I may, I'm going to yield at the moment. We can continue. We've gained you over time. Let's put four minutes on the clock. I suppose we're okay with the time. We'll continue. I'm sorry. Could you refresh your mind? I read the administrative law judge's decision. He acknowledged that on these facts you could go either way. Well, he said that if you could credit the company's witnesses as opposed to his witnesses, again, on page 12 of the reply brief, we note that the company acknowledged concern about Penelope's union steward activity, so there does appear to be some animus there, I guess. No, I guess my only point was that the ALJ acknowledged that on the record there were facts that could have supported a determination that it was for an improper motive or a determination that the employer acted pure of heart for a legitimate motive. That's why our basic argument in this case is that as a case of first impression, in only this case that knew what you had been implying to the Penelope case, we think that limits the here and now. I hope people agree with that. We probably didn't have four minutes. Let's try four minutes. We'll take your call, counsel, over time. Thank you, Your Honor. Good morning, Your Honor. My name is Michael Goldberg. I'm a partner in a community-conceived periodic audit in the Association of the Union in order to proceed in support of the producer's position. So I have a couple of questions. Is the procedure of self-sufficiency? Whether the NLRB should defer to the outcome of the agreement's procedure is a procedure. The procedure of making those is at the heart of the NLRB's responsibility under Section 10A of the Act to protect and enforce employee's Section 7 rights. And you're here to make this your position? Are you currently? No. All right. Is it your position that it only should apply in the case of first impression or should it be a retroactive application for all pending cases? Well, in the brief, we argue for both positions. What is your position? One or the other. We're seeking now a retroactive application of the new deferral rule to this case because this case is the case of first impression. So all other pending cases will not apply. Is this your view? No. I think in balancing the reliance interest of the employer versus the sense where you just enforce the Section 7 rights, the balance comes out differently in those two situations. Until the decision was rendered by the subcommittee, did anybody on either side complain about the procedure that was out there? The old, old and stillburn. How so? It doesn't seem to be anything to record right now. I don't believe so. There's certainly nothing to record. So how's your client, you know, prejudiced by, you know, taking her claim to the union to the agreed upon procedures and then after losing say, well, I want to change the rules? Supposedly, if she'd won, I suspect she would be. Yeah, I understand your question. It's sort of, you know, why should the charging party here get the second bite of the apple? And it's because national labor policy under Section 10A of the Act is in essence in relation to the responsibility to enforce the Act. And that provision specifically says, you know, withstanding the previous procedures negotiated by the parties, you know, and later. That's a strong factor that the Act promotes that. It's one of the main reasons for the Act is to have the people on the labor side and the employer side get together and agree on arbitration, these types of procedures. That was one of the key points, correct? Yes. And that's one of the factors that should be considered. Absolutely, at least five factors. Yes, exactly. One second. I just want to take a moment to clarify this. We had a review. This court in the oil chemical and atomic workers case did say it's a no vote review. And I believe, you know, something I want to make, correct me, but I believe that everybody can see that that's the standard review. Now, that doesn't mean the court shouldn't take into account the MRB's reasoning. So what it really was, it was a balance of the reliance interest on the party employer and the interest of the public interest and the statutory interest of actually enforcing. But doesn't it require if we apply that standard in this case, doesn't it require that we assume that the facts should have come out the other way, that the arbitrators should have decided that it was termination for an improper motive for purposes that could persist in activity? I don't think it's making an assumption one way or the other. It's giving the MRB and the entity empowered by Congress the primary responsibility of enforcing this statute. It's giving it an opportunity. So the deferral policy is recognized. And in some cases, the statutory issue is bound to overlap with a contraction issue again, depending on the circumstance and so on. But when you look at Douglas Phillips' policy, arbitration is provided. In 1947, when Congress abandoned the language of co-voting reliance on grievance arbitration, grievance arbitration in 1937 was a fragile instrument. And it's like the bargaining and sexist center rights were pretty well established by then. Seventy years later, there's no doubt that farmer labor arbitration is very well established. It's supposed to be universal. It's like the bargaining agreements. It's even explained in Missouri now in many non-union workplaces. And called the bargaining. The primary focus of the statute is it's narrowed the fragile instrument over years or over time. So if you can somehow win arbitration, then you will not. One of the first impressions you see because your work has made clear that there needs to be an incentive for the gifts. You have to have a risky envelope. And in a home workplace environment, the employees who challenge an employer in court or an MRE proceeding, they're sticking their neck out. And they'd be afraid to push the law in directions, or reform directions that may be necessary. The General Counsel made the suggestion, was it wasn't? Ms. Bonnell, you're her attorney. It was her case. Yes. But General Counsel initiated the suggestion that we don't apply it prospectually, but let's kind of do it practically. But let's do a little better scheme of things so that people know exactly what issue they're going to be. Yes, but in Ms. Bonnell's case, it sees risky being able to guard for other employees, et cetera. Yes. Thank you. Thank you. Thank you. The other side. Good morning, Your Honors. With regard to the National Labor Relations Board, can you hear me? Yes. Thank you. I'd just like to begin by emphasizing a very important point. And that's that the board, in determining retroactivity issues in this case, exercised its labor in hopes of making expertise do so. And that the collective bargaining interests here, in this case, are fundamental to the act and important to be protected. Across the country, this decision, if it had been applied retroactively, would have potentially disturbed collective bargaining agreements, arbitrations in process, grievance procedures in process. There's a great amount of activity here that the board felt that outweighed any injustice that might occur to certain individuals or Ms. Bonnell's issues. And here, that was fully reasonable. But the reliance is just two parties, and the collective bargaining business, and it can be our fault. We have the board exercising its expertise in that area. We believe, under the best practice case in this court, indicates that, although retroactivity is generally into double review, when an agency such as the board exercises its policymaking expertise, some deference is to that. But even if deference were not due, the board's position here is completely reasonable. And we would stand, even in a McGarthias case, that the other side cites for the five factors. And I agree with the statement made earlier by the panel that here we have, on behalf of Ms. Bonnelly, herself as a representative for the line in McGarthias, we have a certain kind of view that's ultimately going to want to be changed here. She and parties in this case proceeded under their collective bargaining agreement, went through the arbitration proceeding, and got what was due to them under the benefit of their bargain. In that situation, I want to point out that we were surprised that they were arguing under the old standard. Because if you read that sentence in the reply brief to see that they were arguing only, congestively, in retroactivity. Ms. Bailey now seems to have said, we don't want retroactivity to all pending cases, but just our case. Which is the first factor. Should they have considered doing that? Which is an interesting argument. But the board looks at whether to play the role retroactively or post retroactively. And doesn't, as far as I have never read cases, see a situation where they have carved out an exception for somebody in one or two cases. So I completely upheld the court's stand. So is that your answer to Professor Goldberg's argument that we have to reward the plaintiffs over the group petitioner who has aggressively pursued the issue when it wasn't the petitioner, it was the general counsel? I think that's my best answer. I just want to emphasize that the board is given the duty to promote and protect health and rights. And unlike some civil cases, such as Narthea's, where you have an individual appointment, an individual plaintiff pressing a change to the law, the board is looking at all employers that come before it, all litigants that come before it. It's attempting very carefully to make a rule that will evaluate, promote, and support those statutory duties. It has to provide an interest such as collective bargaining. And in this way, if we were to have this case have a carved out exception from its finality, it would then put the employer's counsel who is here as intervener, and I want to make sure she receives some time, in a very bad place because they've relied. You didn't alert me, sir. Oh, I'm sorry. I was trying to hear for three minutes. But four would be fine as well. So I do want to ask if there's any pressing questions about the general rule that it's one or the other. The general rule is that it's going to be one or the other. I think so. So let's start with your case as a best example of that. I mean, I can see some mischief here. It was applied electronically for a lot of people, presumably someone else. Bernalli's out there who won. Yes. So that raises a different kind of question. That raises a different kind of fairness question in terms of, and with regards to public rights. And here the board actually made up a rule that was very specifically tailored to where you are in the process. And whether a collective bargaining agreement actually allowed for a resolution of the conflict of practice charges and issues in arbitration. Is that a reason? Because that would be considered a sins factor. If the court would like to consider it, we would welcome that. Anyway, I think to ask that if you don't mind, please, endorse the result. Thank you. Good morning, your honors. I'm Julie Trout for the intervener, Batcock & Wilcox Construction Company. And I would like to agree with what Judge Huck said earlier, that it was the general counsel in this case that affected this change. In fact, it was suggested in a memorandum that was issued in 2011, which was a couple years after the arbitration decision in this case, but well before the decision came out of the ALJ or the NLRB in this case. In fact, when the NLRB issued its notice and invitation to file briefs regarding the potential change to the deferral standard, Ms. Bedelli could not be found when we served our briefs on the matter. The return of service came back several times. She couldn't be found by her rental address, her PO box, her email address. And so it would be in the record before the court or the NLRB if you look at the service documents. But your client doesn't even provide maintenance services at the plant. So where does that leave us? Well, I think that is an excellent point, your honor. I think that that shows how unfair it would be to the employer in this case. Judge, you're right. Everybody's moved on. Let's just flip this one out. Yes. Ms. Bedelli was terminated back in 2009. This was eight years ago. She has been fully and fairly heard on this matter twice, first before the arbitration panel, and then in a two-day hearing before the ALJ in this case. And so this is not a matter where she hasn't had her day in court. In fact, she's had it twice. Here she's seeking not a second bite at the apple, but rather a third. And it would be manifestly unjust to the employer, as well as to all the other employers in the units out there who have reasonably relied on the Spielberg-Olin standard that was in place for well over 30 years. And they had justifiably relied on that change. And so to your point, Judge Huck, there are other factors in Scarfia's case, and I believe that all of them point towards not applying this new rule retroactively. One in particular would be that this was not a change in the law. This was a hole in the law. This was a well-established rule that was relied on not only by employers, but by the unions as well, in order to promote collective bargaining, which is a principal purpose of the act. As for Ms. Bedelli's counsel's argument that the problem with the record as far as the actual deferral decision, you can't tell whether or not the arbitration panel actually considered. And for a labor practice issue, that issue is waived, because if you look at the exceptions that were filed by the general counsel, the only issue before the board was whether or not the decision was clearly repugnant to the act. There was no issue before the board as to whether or not the arbitration panel actually considered that issue. And so therefore, under Section 10e, that argument is waived. Unless there are any questions from the panel, I would request that a decision of the NLRB be affirmed. Thank you. Now, the other side has taken us over. Perhaps we'll send you over. But if either of you would like to come back for a moment. Perhaps just one point on the equities, Your Honor, and particularly on the impact on reliance interest. If this case is carried under the theory of the case of first impression, then the concern is that with an L.A. specific employer, it does not have to invest resources to revitigate this case, because there was full evidentiary hearing and conclusions of fact. Lisa, all you have to do is discuss those facts. And Mike, if you do, defer us. Yes. If this case turned on the failure of the arbitrator to more fully articulate his resolution of the grievance, if he credited the company's witnesses more than the L.A.'s and therefore found that her union activities were not the cause of her termination, is that what you're saying? No, Your Honor. I don't know if I've gone quite that far, but I'm tempted to because it is a very cursory explanation of the ALJ's conclusion. And, of course, it rests in turn on a very fact-filled arbitration kind of decision. Well, it's fact-filled because we don't know, we don't have a transcript of what the witness has said. Yes. And we don't have a transcript of what the arbitrator or what we believe is it. I find it in favor, or because in this case, the committee, we find it in favor of the employer. That's right. And that's the problem that the new deferral standards intended to address our simple position is that particularly under the L.A.'s pronged first impression standard, it really would further the law. I hear you. You keep saying that pronged. That's one of five factors. All right. But you have to consider that one as the other four could be your next best factor. The next best factor, I think, is, I'm not sure I can do that right now. That's a good question. I'm going to concede that. Okay. Thank you very much. And now our baseline for decision.
judges: W. Fletcher, Tallman, Huck